UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JARVIS ELDER,

                                Plaintiff,

-vs-

J. McCARTHY, Sergeant, T. MacINTYRE,
Corrections Officer, KEN KLING, Hearing Officer/
Voc. Supr., ALBERT PRACK, Dir. of Special
Housing, and MARK L. BRADT, Superintendent,

                                Defendants.

DECISION AND ORDER

14-CV-6216 CJS

_____

## INTRODUCTION

This is an action under 42 U.S.C. § 1983 brought by Jarvis Elder ("Plaintiff"), a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Now before the Court is Defendants' motion (Docket No. [#48]) to partially dismiss the Amended Complaint. The application is granted in part and denied in part.

## BACKGROUND

The facts in the Amended Complaint [#41] are accepted as true for purposes of this Decision and Order. In September 2012, Plaintiff was housed at Attica Correctional Facility ("Attica"), where Defendant J. McCarthy ("McCarthy") was a Corrections Sergeant, Defendant T. MacIntyre ("MacIntyre") was a Corrections Officer, Defendant Ken Kling ("Kling") was a Vocational Supervisor and Hearing Officer, and Defendant Mark Bradt ("Bradt") was Superintendent. On September 11, 2012, McCarthy issued Plaintiff a misbehavior report, charging him with, *inter alia*, forging disbursement requests from the

1

account of an inmate named Lawrence ("Lawrence"). McCarthy purportedly based the misbehavior report on confidential information concerning criminal activity by Lawrence, his discovery of certain property belong to Plaintiff in Lawrence's cell, and his examination of handwriting on disbursement forms found in Lawrence's cell. Although it is not clearly spelled out, it appears that McCarthy surmised that Lawrence learned that Plaintiff had forged his signature, and that Lawrence retaliated by taking items of personal property from Plaintiff's cell and setting Plaintiff's cell on fire.[1] In any event, Plaintiff maintains that McCarthy's misbehavior report was procedurally deficient, because it failed to comply with New York State Regulations, 7 NYCRR § 251-3.1, and was factually inaccurate.

In preparation for his disciplinary hearing, Plaintiff selected MacIntyre as his employee assistant, and asked him to arrange to have certain witnesses and documentary evidence at the hearing. In brief, Plaintiff wanted MacIntyre to obtain copies of the supposedly-forged disbursement forms, and to interview Lawrence and the corrections officers who were supposed to have verified the identity of the person submitting the forms. Plaintiff maintains, however, that MacIntyre failed to provide him with the requested evidence and did not interview potential witnesses. In particular, MacIntyre indicated that he could not identify the corrections officers who had signed the disbursement forms, because the handwriting was illegible, and that Lawrence refused to testify.

On September 14, 2012, Plaintiff appeared for his disciplinary hearing before Kling, who had been assigned as the hearing officer by Superintendent Bradt. Plaintiff contends

---

[1]As discussed further below, the hearing officer, Defendant Kling, subsequently found Plaintiff guilty, and as part of his decision, alluded to the fact that Lawrence had taken retaliatory action against Plaintiff. ("The severity of a charge of this nature can and may have already set off retaliation which is disruptive to the smooth operation of a facility and puts both inmates and staff in harm's way.").

2

that Kling refused to assist him in obtaining copies of the alleged forged disbursement forms, and failed to identify the corrections officers who had signed the disbursement forms. At the hearing, Plaintiff testified that he was innocent, though his exact explanation of what happened is unclear. *See*, Hearing Transcript. More specifically, Plaintiff vaguely indicated that there was some type of financial dealings between himself and Lawrence, involving the purchase of art supplies, but he denied stealing from Lawrence. *See*, Hearing Transcript at p. 5 ("[H]e had some money coming in so I helped the man out I did some art work I got art supplies of [sic] crafts too so I did a lot of art work for the guy so therefore he knew these moneys [sic] was going to his address only thing I don't understand is that how did he end up with my personal information."). Plaintiff further argued that McCarthy was not qualified to analyze handwriting. McCarthy admitted that he was not an expert in handwriting, and that the only real basis for the misbehavior report was his belief that the handwriting on the allegedly-forged disbursement forms was Plaintiff's. Nevertheless, Kling indicated that he found McCarthy credible, found Plaintiff guilty of the misbehavior charges, and imposed a sentence consisting of, *inter alia*, six months in the Special Housing Unit ("SHU") and $630 in restitution. Plaintiff contends, though, that Kling's ruling was arbitrary and capricious, since there was no credible evidence of his guilt.

On September 22, 2012, Plaintiff filed an appeal to Bradt, Attica's Superintendent, asserting that his "Fourteenth Amendment" rights were violated in the following ways: 1) the misbehavior report was "not in compliance with [DOCCS] standards"; 2) his employee assistant (MacIntyre) did not bring him documents or interview witnesses; and 3) the hearing officer (Kling) did not explore why an inmate witness, who had declined to testify, was unwilling to testify. On September 26, 2012, Bradt affirmed Kling's determination,

stating only, "After review, I find no reason to modify the disposition rendered." Amended Complaint [#41] at p. 86.

Subsequently, on or about October 16, 2012, Plaintiff appealed to Defendant Albert Prack ("Prack") in his capacity as DOCC's Director of Special Housing/Inmate Disciplinary Programs. In the appeal, Plaintiff asserted that his "Fourteenth Amendment" rights were violated in the following ways: 1) McCarthy did not perform a proper investigation; 2) MacIntyre did not provide proper assistance prior to the hearing; 2) Kling did not provide a fair hearing; 3) he was denied a handwriting expert witness; 4) there was no testimony from the corrections officers who would have signed off on the allegedly-forged disbursement forms; and 5) there was insufficient evidence of guilt. On December 6, 2012, Prack issued a form notice, affirming Plaintiff's disciplinary conviction. Amended Complaint [#41] at p. 62.

Subsequently, Plaintiff commenced an Article 78 Proceeding challenging the conviction. On March 21, 2014, the New York State Supreme Court, Appellate Division, Fourth Department, reversed the conviction, finding that it was not supported by substantial evidence, that MacIntyre had not provided appropriate assistance, and that Plaintiff was denied the right to call witnesses. However, by that time Plaintiff had already served 180 days in SHU.

On May 1, 2014, Plaintiff commenced this action. The Amended Complaint contends that Plaintiff was innocent of the misbehavior charge, and that Defendants violated his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, by falsely charging and convicting him of the infraction.

The pleading contends that Plaintiff's time in SHU was a "significant and atypical

4

hardship," for the following reasons: 1) he was confined to his cell for 23 hours per day, with one hour of exercise; 2) he could not sleep well because the lights were left on his cell; 3) he was uncomfortable and hyper-vigilant because he was placed with an unfamiliar cell mate; 4) he had no privacy when using the toilet; 5) he was restricted to taking two showers per week; 6) he could not receive phone calls and could have only one visitor per week; 7) he could not participate in activities such as religious services, drug counseling, or vocational training; 8) he could not receive packages in the mail or purchase items from the commissary; and 9) his cell was "often dirty" and he was provided "barely any cleaning supplies." Amended Complaint ¶ ¶ 39-41.

Further, the pleading alleges that Bradt and Prack failed to properly train or supervise McCarthy, MacIntyre and Kling, with regard to the filing, investigation and hearing of disciplinary charges. The pleading also seems to allege that Kling failed to supervise McCarthy and MacIntyre, although it does not appear that he was in a supervisory position over them.

The pleading purports to assert three types of claim: 1) a Fourteenth Amendment Procedural Due Process claim; 2) a "cruel and unusual punishment" claim under the Eighth Amendment, based on Plaintiff's living conditions while he was confined in the SHU; and 3) "common law claims of excessive wrongful confinement and cruel and unusual punishment under New York Law." Amended Complaint ¶ 1.

On May 11, 2015, Defendants filed the subject motion to dismiss, pursuant to Rule 12(b)(6). The motion is directed at the § 1983 claims,[2] and has two parts: First,

---

[2]Defendants did not move against Plaintiff's state-law claims. *See*, Amended Complaint [#41] at ¶ 1 ("Plaintiff alleges the Common Law Claims of ["]EXCESSIVE WRONGFUL CONFINEMENT" AND "Cruel and Unusual Punishment" under New York Law." [sic]).

Defendants contend that the Amended Complaint fails to state an Eighth Amendment claim against any defendant, since Plaintiff's housing conditions in the SHU were typical of such confinement, which has already been determined to be constitutionally adequate; and second, Bradt and Prack maintain that the pleading fails to allege that they were personally involved in the alleged procedural due process violation, since it merely contends that they affirmed Plaintiff's disciplinary conviction.

On May 26, 2015, Plaintiff filed responding papers [#51].[3] With regard to the claims against Bradt and Prack, Plaintiff contends that he has adequately pleaded their personal involvement, since his appeal papers informed Bradt and Prack of constitutional violations, which Bradt and Prack failed to remedy.

Defendants filed a reply, reiterating the points in their initial brief.

DISCUSSION

Plaintiff's *Pro Se* Status

Since Plaintiff is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Motions to Dismiss Pursuant to FRCP 12(b)(6)

The general legal principles concerning motions under FRCP 12(b)(6) are well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to

---

[3]A duplicate was inadvertently filed on June 3, 2015, as docket entry [#65].

> dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (*quoting Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[4] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950

---

[4] The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. den.* 531 U.S. 1052, 121 S.Ct. 657 (2000).

7

(2009) (citation omitted). "The application of this 'plausibility' standard to particular cases is 'context-specific,' and requires assessing the allegations of the complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Management Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (citation and internal quotation marks omitted).

Section 1983

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
> ***
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

*Personal Involvement of Bradt and Prack*

With regard to the § 1983 claims, the Amended Complaint asserts that Bradt and Prack should be deemed to be "personally involved" in the alleged constitutional violations,

under at least two of the *Colon* factors set forth above, namely, that Bradt and Prack were notified of the constitutional violation by reading Plaintiff's appeals but failed to remedy the situation (*Colon* factor (2)and possibly also (5)), and that Bradt and Prack were grossly negligent in training and supervising their subordinates (*Colon* factor (4)). Bradt and Prack contend, however, that the pleading fails to plausibly plead that they were personally involved in any alleged constitutional violation.

With regard to *Colon* factor four, the Court agrees that the Amended Complaint fails to plausibly allege that Bradt or Prack were grossly negligent in training or supervising McCarthy, MacIntyre or Kling. There are no factual allegations to support such a theory. Instead, the pleading merely makes factual allegations concerning alleged wrongdoing by McCarthy, MacIntyre and Kling, and then makes a conclusory and unsupported allegation that Bradt and Prack are therefore guilty of negligent training and/or supervision. Accordingly, the Amended Complaint fails to plead personal involvement by Bradt or Prack under *Colon* factor four.

With regard to *Colon* factors two and five, Defendants cite decisions by other district courts in the Western District, for the proposition that "merely affirming a hearing officer's determination is not sufficient to establish personal involvement." Def. Memo of Law at p. 9 (*citing Abdur-Raheem v. Selsky*, 598 F.Supp.2d 367, 370 (W.D.N.Y. 2009)). However, presently there is some disagreement in this Circuit as to whether a DOCCS official becomes "personally involved" in an inmate's procedural due process claim, merely by affirming a prison disciplinary conviction. *See, e.g., Ellerbe v. Jasion*, No. 3:12–cv–00580 (MPS), 2015 WL 1064739 at *7 (D.Conn. Mar. 11, 2015) ("[D]istrict courts in this circuit are split over whether and to what extent a supervisor's denial of an administrative appeal

constitutes personal involvement.").

The Second Circuit recently alluded to the unsettled nature of this question. *See, Jamison v. Fischer*, — Fed.Appx. — , 2015 WL 3953399 at *2, n. 1 (2d Cir. Jun. 30, 2015) ("*Jamison*"). In *Jamison*, the Circuit Court declined to reach the issue of whether the supervisor who affirmed the inmate's disciplinary conviction was "personally involved," since the supervisor was entitled to qualified immunity:

> Jamison's claim that Bezio violated due process by affirming the disciplinary action on administrative appeal is necessarily derivative of his claim against Tokarz. For the reasons stated as to Tokarz, then, Bezio also was entitled to qualified immunity.
>
> ***
>
> *In light of this conclusion, we need not address whether the district court correctly dismissed the complaint against Bezio for lack of personal involvement. See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir.2013) (noting that *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but declining to decide issue).

*Jamison*, 2015 WL 3953399 at *2 & n.1 (emphasis added). Such statement, with its reference to the *Grullon* decision, suggests the unsettled nature of the issue. However, *Grullon* suggests that, at the pleading stage, a prison supervisory official who actually receives a letter or appeal referencing an ongoing constitutional violation will be deemed to be personally involved in the underlying violation, unless it is clear that he took "appropriate action" to address the violation:

> At the pleading stage, even if [inmate] Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference—if his amended complaint contained factual allegations indicating that the Letter was sent to

> the Warden at an appropriate address and by appropriate means—that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained. It is of course possible that the Warden read the Letter and took appropriate action or that an administrative procedure was in place by which the Warden himself would not have received the Letter addressed to him; but those are potential factual issues as to personal involvement that likely cannot be resolved without development of a factual record.

*Grullon v, City of New Haven*, 720 F.3d at 141; *see also, Griffin v. Goord*, 66 Fed. Appx. 245, 246 (2d Cir. May 1, 2003) (Indicating that DOCCS Commissioner and Deputy Commissioner could have personal involvement in procedural due process violation, if they affirmed the inmate's disciplinary conviction).

The Court finds that the Amended Complaint adequately pleads personal involvement by Bradt and Prack. In that regard, following Plaintiff's conviction at the prison disciplinary hearing, and while he was still serving his SHU sentence, he filed written appeals with both Bradt and Prack, asserting that McCarthy, McIntyre and Kling violated his right to procedural due process at the hearing. Bradt and Prack subsequently issued written decisions affirming the conviction, thereby indicating that they had reviewed Plaintiff's appeal. Such facts are sufficient to demonstrate, at the pleading stage, that Bradt and Prack were made aware that a constitutional violation was occurring, and that they failed to remedy the violation. Accordingly, Bradt and Prack's motion to dismiss the § 1983 claims against them, for lack of personal involvement, is denied.

<u>Eighth Amendment Conditions of Confinement Claim</u>

Plaintiff maintains that the conditions in the SHU, where he spent 180 days as part of his disciplinary sentence, violated his Eighth Amendment rights. Plaintiff, though, has

confused the requirements of an Eighth Amendment claim with the requirements of a Fourteenth Amendment Procedural Due Process claim. That is, while the Amended Complaint asserts that Plaintiff experienced "significant and atypical conditions of confinement" sufficient to support a due process claim, it does not adequately plead that his living conditions in the SHU amounted to cruel and unusual punishment.

With regard to the former type of claim, "[a]n inmate has a liberty interest protected by procedural due process when his confinement subjects him to 'atypical and significant hardship in relation to the ordinary incidents of prison life.'" *Fludd v. Fischer*, 568 Fed.Appx. 70, 72 (2d Cir. Jun. 6, 2014) (citations and internal quotation marks omitted). Lengthy disciplinary sentences in the SHU may or may not satisfy the "atypical and significant" requirement, depending upon the particular facts of a case. *See, e.g., Kalwasinski v. Morse*, 201 F.3d 103, 106 (2d Cir. 1999) ("[W]e have consistently reminded the district courts that in order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement and to identify with specificity the facts upon which their conclusions are based.") (citations and internal quotation marks omitted). In Defendants' instant motion, they have not challenged Plaintiff's contention that his 180-day SHU sentence amounted to an atypical and significant hardship in relation to the ordinary incidents of prison life, sufficient to establish a liberty interest in connection with his procedural due process claim. *See, J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) ("In the absence of factual findings to the contrary, [SHU] confinement of 188 days is a significant enough hardship to trigger *Sandin*.").

The standard for an Eighth Amendment conditions-of-confinement claim is different, however. *See, Booker v. Maly*, No. 9:12–CV–246 (NAM/ATB), 2014 WL 1289579 at *17

(N.D.N.Y. Mar. 31, 2014) ("[A]typical and significant conditions, compared to the ordinary incidents of prison life, may be sufficient to create a liberty interest, but do not establish an Eighth Amendment violation."), *affirmed*, 590 Fed.Appx. 82 (2d Cir. Jan. 14, 2015).

> The Eighth Amendment does not mandate comfortable prisons, but prisons nevertheless must provide humane conditions of confinement. A claim under for violations of the Eighth Amendment requires (1) an objectively, sufficiently serious denial of the minimal civilized measure of life's necessities and (2) a sufficiently culpable state of mind on the part of the responsible official.

*Willey v. Kirkpatrick*, — F.3d — , 2015 WL 5059377 at *13 (2d Cir. Aug. 28, 2015) (citations and internal quotation marks omitted). In other words,

> [t]o demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test. First, the plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs. Second, the plaintiff must demonstrate that the defendants imposed those conditions with deliberate indifference.

*Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citations and internal quotation marks omitted).

Here, the Amended Complaint describes the conditions that Plaintiff experienced in SHU, and maintains that he was extremely bothered by them. However, the conditions about which Plaintiff complains, such as having to share a cell with an unfamiliar bunkmate, having to use the toilet without privacy, and having to go without certain privileges and social activities, do not violate the objective prong of the Eighth Amendment analysis set forth above. *See, Horne v. Coughlin*, 155 F.3d 26, 31 (2d Cir. 1998) (Six-month SHU detention, without more, did not violate the Eighth Amendment); *see also,*

13

*Booker v. Maly*, 2014 WL 1289579 at *16 ("Restrictive SHU conditions on their own do not *per se* rise to the level of cruel and unusual punishment.").

Plaintiff's most compelling allegation, concerning the conditions of his confinement in SHU, is that his cell was "often dirty" and he was provided "barely any cleaning supplies." Amended Complaint ¶ ¶ 39-41. However, even assuming *arguendo* that such a vague assertion was sufficient to plausibly plead the objective prong of an Eighth Amendment claim, which the Court doubts, Plaintiff's claim would nevertheless fail because he has not included plausible allegations that any Defendant had the required knowledge of, and deliberate indifference to, his particular living conditions.[5] *See, Booker v. Maly*, 2014 WL 1289579 at *16 ("[T]o the extent that plaintiff blames defendants Maly, Smith, Prack, and Fischer for the SHU conditions only to the extent that they were involved in the disciplinary hearing at or its review, any Eighth Amendment claim regarding the subsequent SHU conditions may be dismissed because there is no allegation that any of the three defendants were personally involved in maintaining the conditions in SHU or expected plaintiff to be subjected to anything more than the 'normal' conditions in SHU.") (footnotes and citations omitted). Consequently, the Amended Complaint fails to plead an actionable Eighth Amendment claim.

CONCLUSION

Defendants' application for partial dismissal [#48] is granted in part and denied in part. The Eighth Amendment claim is dismissed, but Defendants' application is otherwise

---

[5]Similarly, even assuming that the particulars concerning Plaintiff's complaint about the lights being left on in the SHU satisfy the Eight Amendment's objective prong, *see, Booker v. Maly*, 2014 WL 1289579 at *18 (collecting cases discussing whether "nightime cell illumination" violates the 8th Amendment), he has not alleged that any Defendant was deliberately indifferent to that situation.

denied. Defendants are directed to file and serve an answer to the Amended Complaint within twenty days of the date of this Decision and Order. Defendants' counsel is also directed to contact the chambers of the Honorable Jonathan W. Feldman, the United States Magistrate Judge to whom this case has been referred for all non-dispositive pretrial matters, and request a new scheduling order.

So Ordered.

Dated: Rochester, New York
September 8, 2015

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge